**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **VANESSA TAYLOR** | **CIVIL DOCKET NO. 6:24-cv-01125** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **ST. LANDRY PARISH SCHOOL BOARD ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendant, St. Landry Parish School Board (hereinafter, "Defendant"). [Doc. 22]. The Motion is opposed by the plaintiff, Vanessa Taylor (hereinafter, "Plaintiff") [Doc. 24], and the Defendant filed a Reply brief. [Doc. 27]. For the following reasons, the Motion is GRANTED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This employment discrimination lawsuit arises out of the decision of the principal of North Central High School ("the School") not to reappoint Plaintiff as the School's Athletic Director ("AD") for the 2022–2023 school year. In 1997, Defendant hired the Plaintiff as a teaching assistant; she was later promoted to the position of special educational teacher. [Doc. 22-3, ¶¶ 5–6]. She was also the girls' basketball coach. [Doc. 22-5, ¶ 9]. In 2020, Plaintiff was appointed as the School's AD, and this appointment was renewed for the 2021–2022 school year. [Doc. 22-3, ¶ 8]. Under the Defendant's policies, coaching duties are purely voluntary and secondary to the educational duties of teachers, [*Id.*, ¶ 6], and teachers who coach are paid a stipend for doing so. [Doc. 22-4, pp. 3–4].

Dr. Esrom Pitre ("Pitre") was hired as the School's principal in August 2022. [Doc. 22-3, ¶ 11]; [Doc. 22-5, ¶ 3]. When he arrived at the School, Pitre identified potential organizational and personnel problems within the School's athletic department. [Doc. 22-5, ¶ 10]. Specifically, Pitre stated that "[a]lthough several athletic programs demonstrated success in competition, there was clear internal discord among members of the coaching staff that disrupted collaboration and the overall functioning of the department." *Id.* To remedy these issues, Pitre undertook a review of all coaching assignments prior to the start of the school year and hired an independent consultant, Darius Sias ("Sias"), to evaluate the School's athletic program and provide recommendations. [*Id.*, ¶¶ 10-11].

During the investigation, both Pitre and Sias discovered potential conflicts of interest that could arise from an individual serving simultaneously as a head coach and the AD. [*Id.*]. Accordingly, from August 3-8, 2022, meetings were held with coaches—including the Plaintiff—as well as administrative staff and community members. [*Id.*, ¶¶ 11–14]; [*Id.*, pp. 4–12]. In these meetings, several concerns regarding the management of the athletic department emerged, including: (i) resistance to administrative staffing decisions (which affected other sports); (ii) public conduct that negatively affected team cohesion; (iii) inconsistences in the allocation of resources across athletic programs; (iv) prioritization of the girls' basketball program over other sports; and (v) neglect of facility maintenance, which had affected both the safety and quality of athletic activities. [*Id.*, pp. 4–12].

To address these concerns, Pitre restructured the School's athletic leadership, modeling it on successful athletic programs at the university level and converting the AD position from a dually-held role to a dedicated, full-time administrative position. [*Id.*, ¶¶ 15–20]; [*Id.*, pp. 10–12].  This restructuring meant that the individual who held the AD position could not simultaneously coach at the School.  According to Pitre, when informed of the restructuring, the Plaintiff refused to step down as head coach of the girls' basketball team.  [*Id.*, ¶ 17]; [*Id.*, p. 11].  For this reason, Pitre contends, he declined to reappoint the Plaintiff as the school-site AD for the 2022–2023 school year, and instead, appointed Chris Caine ("Cane"), who had agreed to forego his head coaching position to fully assume the responsibilities of AD.  [*Id.*, ¶¶ 18-20].  The Plaintiff alleges that she was informed of Pitre's decision to appoint Caine as AD for the 2022–2023 school year during a public meeting with two assistant principals and other coaches.  [Doc. 22-9, p. 1].

According to the Defendant's Motion, the Plaintiff filed a Title IX complaint pursuant to School Board policy in September 2022, alleging gender and age discrimination and violation of state or agency policies.[1]  At the conclusion of the investigation, the investigator determined that there was insufficient information to

---

[1] In her state court petition, the Plaintiff alleges that she "opened" an EEOC charge (#461-2023-00983) "whereby [she] continued her attempts to mediate this matter." [Doc. 1-5, ¶ 4]. In her "Statement of Genuinely Disputed Material Facts," the Plaintiff references the filing of her EEOC charge. [Doc. 24-2, ¶ 9]. However, the Plaintiff did not attach her EEOC file to either her state court petition or her response to the instant Motion. The Defendant does not argue that the Plaintiff failed to exhaust administrative remedies, therefore the Court presumes that she did, indeed, file an EEOC claim. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 552, 139 S. Ct. 1843, 1851, 204 L.Ed.2d 116 (2019) (Under Title VII, the filing of an EEOC charge before filing a lawsuit is required, but this requirement is a precondition to suit that is not jurisdictional and can be waived).

support the Plaintiff's allegations and no evidence of any violation of state or agency policies. [*Id.*, p. 15].

On April 25, 2024, Plaintiff filed suit against the School Board and its insurer in the 27th Judicial District Court in St. Landry Parish, Louisiana.[2] The Plaintiff's state court petition alleges several employment-related claims, but the Plaintiff fails to clearly articulate the legal theories asserted and the law under which each claim is alleged. Construing the allegations liberally, the Court has attempted to discern whether the claims, although unclear, are supported under any applicable legal authority cited in the Complaint. To that end, it appears that the Plaintiff is alleging the following claims: (1) age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"); (2) gender discrimination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2; the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.* ("LEDL"); and (3) retaliation and hostile work environment under Title VII, the LEDL, 42 U.S.C. § 1981, and the Louisiana Whistleblower Statute, La. R. S. § 23:967. The matter was properly removed to this Court on August 19, 2024, on the basis of federal question jurisdiction. [Doc. 1].

On October 15, 2025, Defendant filed the instant Motion, contending that Plaintiff is unable to prove essential elements of her claims and that the Defendant

---

[2] Pitre was initially made a Defendant in this case, but he was voluntarily dismissed on June 19, 2025. [Docs. 18–19].

is entitled to summary dismissal of all claims as a matter of law. All issues having been briefed by the parties, the Motion is ripe for review.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Thus, the party moving for summary judgment bears the burden of demonstrating that there are no genuine disputes of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id., citing Celotex*, 477 U.S. at 323. Yet, "a [non-movant] cannot defeat summary judgment with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007), *citing Anderson*, 477 U.S. at 248. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine dispute for trial—and thus a grant of summary judgment is warranted—when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

## II.   Age and Gender Discrimination and Retaliation Claims Alleged Under 42 U.S.C. § 1981

As an initial matter, to the extent Plaintiff attempts to assert claims for age and gender discrimination and age and gender-based retaliation claims under 42 U.S.C. § 1981, those claims fail as a matter of law, because Section 1981 protects only against race-based discrimination and retaliation, not age or gender. *See, e.g., Yarbrough v. SlashSupport, Inc.*, 152 F.4th 658, 667 (5th Cir. 2025) (a protected activity is either: (1) opposing race discrimination, or (2) participating in an investigation, proceeding, or hearing under this subchapter); *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981) ("no court has held that allegations of gender based discrimination fall within [Section 1981's] purview."); *Alleman v. Louisiana Dep't of Econ. Dev.*, 698 F. Supp. 2d 644, 656 n.7 (M.D. La. 2010) ("Section 1981 is limited to claims of race discrimination."), *citing Runyon v. McCrary,* 427 U.S. 160, 96 S. Ct. 2586, 2594, 49 L.Ed.2d 415 (1976); *Spann v. FedEx Freight, Inc.*, 2024 WL 3155888, at *1 (S.D. Miss. June 17, 2024), *aff'd,* 2025 WL 1938355 (5th Cir. 2025),

*citing CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 453, 128 S. Ct. 1951, 1958, 170 L.Ed.2d 864 (2008) (holding that § 1981 encompasses retaliation claims based on race discrimination). In short, none of the Plaintiffs' claims sound in § 1981 because none of them allege racial discrimination.

Accordingly, Plaintiff's age and gender discrimination claims and age and gender-based retaliation claims asserted under Section 1981 are dismissed.

### III. Age and Gender Discrimination Claims Alleged Under Title VII, the ADEA, and the LEDL

The Plaintiff alleges an age discrimination claim under the ADEA and a gender discrimination claim under Title VII and the LEDL. Under the ADEA, an employer cannot "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The LEDL provides: "It shall be unlawful discrimination in employment for an employer to ... discharge any individual, or otherwise to intentionally discriminate against any individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." La. Rev. Stat. § 23:332.

At the outset, the Court notes that for both age and gender discrimination claims under federal law, courts apply the same analysis. *See Ray v. Tandem*

*Computs., Inc.*, 63 F.3d 429, 435 n.20 (5th Cir. 1995) ("We apply the same analysis to [plaintiff's] age claim that we applied to her sex discrimination claims."). Furthermore, because the LEDL is "substantively similar" to Title VII, Louisiana courts routinely analyze federal and state gender discrimination claims under the Title VII standard. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 n.4 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023), *citing Trahan v. Rally's Hamburgers, Inc.*, 696 So.2d 637, 641 (La. App. 1st Cir. 1997).

A plaintiff lacking direct evidence[3] of age or gender discrimination must satisfy the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See Dabbasi v. Motiva Enterprises, L.L.C.*, 107 F.4th 500, 505 (5th Cir. 2024). "An analysis under *McDonnell Douglas* involves three possible steps. First, a plaintiff must establish a *prima facie* case." *Dabbasi*, 107 F.4th at 505. The burden then shifts to the employer to produce evidence that the complained-of conduct was the result of a "legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (noting that defendant's burden "is one of production, not persuasion," and "can involve no credibility assessment") (cleaned up). If the defendant produces evidence of a nondiscriminatory reason for the employment action, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but is instead a pretext for … [a discriminatory] purpose." *Hardison v. Skinner,* 2022 WL

---

[3] "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

2668514, at *2 (5th Cir. July 11, 2022) ("To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.").

To establish a *prima facie* case for age and gender discrimination claims, a plaintiff must demonstrate the following: "'(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class [or, under the ADEA], (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.'" *Dabbasi*, 107 F.4th at 505, *quoting Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). *See also Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997–98 (5th Cir. 2022) (setting forth the *prima facie* elements in a gender discrimination case).

Here, the Defendant argues that Plaintiff has not alleged—and is unable to prove—two essential elements of her *prima facie* claim, that is, that she was qualified for the AD position and that she suffered an adverse employment action. [Doc. 22-2, p. 14]. Specifically, Defendant asserts that Plaintiff was not qualified for the AD position because she refused to forego coaching the girls' basketball team for the 2022–23 school year, and dual roles were prohibited under Pitre's restructuring of the AD role. [*Id.*, p. 15]. Furthermore, Defendant contends that Plaintiff was not entitled to continued appointment as AD because the position was designated as year-to-year and there was no expectation of continued employment.[4] [*Id.*]. The

---

[4] Under Louisiana law, a school's principal is responsible for the administration of a school's athletic program, and principals also have authority to select coaches and school-site ADs, with AD appointments being made at the outset of each year. [Doc. 22-5, ¶ 4]; *see also*

Defendant supports its arguments with the affidavits of Pitre [Doc. 22-5] and Kellie Rabalais, Defendant's Director of Human Resources [Doc. 22-3], as well as the Defendant's Coaches Handbook [Doc. 22-7], and the investigative file from the August 2022 review of the athletic department. [Doc. 22-9]. Based on this evidence, Defendant argues that the Plaintiff did not suffer an adverse employment action when Pitre declined to reappoint her as AD for the 2022-23 school year.

The Plaintiff responds that she was not offered the option to remain AD by resigning from coaching, and that she was demoted without discussion. In her Complaint, she alleges that she was qualified for the position, "which is evidenced by the fact that she operated in this role for a short period." [Doc. 1-5, 7]. But the Defendant set forth evidence showing that the qualifications for the AD position changed at the start of the 2022-23 school year, and the Plaintiff proffers no evidence to support her argument that she remained qualified for the position or that Pitre was obligated to reappoint her.

A party opposing a summary judgment motion may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–57, 106 S. Ct. 2505, 2513–14, 91

---

La. Rev. Stat. § 17:81(4)(a). In her Declaration, Ms. Rabalais states that the appointment of head coaches and school-site ADs are made at the outset of each school year and that there is, therefore, no expectation of continued appointment from year to year. [Doc. 22-3, ¶¶ 9–10]; [Doc. 22-5, ¶ 8].

L.Ed.2d 202 (1986). Here, the Plaintiff fails to establish a *prima facie* case of either age or gender discrimination and thereby fails to set forth any specific facts showing the existence of a genuine issue for trial. Consequently, these claims, alleged under both federal and state law, must be dismissed.[5]

## IV. Retaliation Claim Under Title VII, ADEA, and Louisiana Whistleblower Statute

The nature of the Plaintiff's retaliation claim, and the facts supporting the claim, are scant. Plaintiff advances two alternative retaliation theories, neither of which withstands scrutiny. First, she contends that she was retaliated against after "she inquired, privately, with [Dr.] Pitre as to the reason she was not selected to serve" as AD. [Doc. 1-5, ¶ 3]. Specifically, the Plaintiff alleges that Pitre avoided her after her demotion. She also contends that she was met with "hostility" by Pitre when she reported student behavioral concerns on one occasion. [Doc. 22-4, ROI 14]. She further argues that she endured ostracism, hostility, and exclusion, which constitute "materially adverse actions." To the extent that the Plaintiff's retaliation claim is gender-based, it is properly considered under Title VII; if it is age-based, it is considered under the ADEA. The Court also finds that the claim is alleged under the Louisiana Whistleblower Statute, La. Rev. Stat. § 23:967.

---

[5] As this Court finds that Plaintiff is unable to establish a *prima facie* case for her claims of gender and age discrimination, it need not address steps two and three of the *McDonnell Douglas* burden-shifting framework. *See Ames v. Ohio Dept. of Youth Servs.*, 605 U.S. 303, 308–09 (2025) ("The plaintiff bears the 'initial burden' of 'establishing a prima facie case[,]' [and] … [*i*]*f the plaintiff clears that hurdle*, the burden then 'shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'") (emphasis added).

Title VII makes it unlawful to discriminate or take an adverse employment action against an employee who has opposed an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). *Lewis v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025). Similarly, the ADEA makes it unlawful for an employer to discriminate, or retaliate, against an employee "because such individual ... has opposed any practice made unlawful by [the Act]." 29 U.S.C. § 623(d). And the LWS "outlaws reprisal by an employer against an employee who, in good faith and after advising the employer of the violation of the law, discloses or threatens to disclose an unlawfully discriminatory business practice." *Johnson v. Hospital Corp. of America*, 767 F. Supp. 2d 678, 686 n.1 (W.D. La. 2011). For all three claims, courts apply the same analysis used for retaliation claims alleged under Title VII. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998), *citing Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir.1994) (applying *McDonnell Douglas* to an ADEA claim); *cf. Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996) (applying *McDonnell Douglas* to Title VII unlawful retaliation cases). Similarly, the Fifth Circuit and Louisiana state courts consistently cite to Title VII standards in interpreting § 23:967. *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 415 (5th Cir. 2018), *citing Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 n.1 (5th Cir. 2007) ("the standards governing both claims [under Title VII and § 23:967] are materially indistinguishable"); *Smith v. AT&T Sols.*, 90 F. App'x 718, 723 (5th Cir. 2004) ("[w]hile the Louisiana Supreme Court has not spoken directly on whether [Title VII's] framework applies to section 23:967 cases, Louisiana courts

have often looked to federal anti-discrimination jurisprudence in interpreting Louisiana's anti-discrimination statutes"); *Imbornone v. Treasure Chest Casino*, 2006 WL 1235979, at *3 (E.D. La. May 3, 2006); *Tatum v. United Parcel Serv., Inc.*, 79 So.3d 1094, 1103–04 (La. Ct. App. 2011).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there is a causal link between the protected activity and the adverse employment action. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005). Important here, the adverse employment action must occur *following* the employee's protected activity. *See Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997).

Protected activity is "opposition to any practice rendered unlawful by Title VII including making a charge, testifying, assisting, or participating in any investigation proceeding or hearing under Title VII." *Patrick v. Walmart, Inc.,* 2020 WL 908443 at *10 (W.D. La. Feb. 24, 2020), *quoting Ackel v. Nat'l Commc'ns.*, 339 F.3d 376, 385 (5th Cir. 2003). And "[a]n adverse employment action is one that 'a reasonable employee would have found … [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012)*, quoting Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). Additionally, "retaliation claims must be prove[n] according to traditional principles of but-for causation.… This requires that the unlawful retaliation would not have

occurred in the absence of the alleged wrongful act or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Here, Plaintiff's retaliation theory reflects a fundamental misunderstanding of the elements of a Title VII retaliation claim. The Plaintiff's non-reappointment as AD is the only employment action in the record that qualifies as materially adverse. That decision occurred *before* Plaintiff engaged in any activity protected by Title VII. And the Plaintiff sets forth no evidence that her inquiry into the reasons for her non-reappointment constituted protected activity, as she proffers no evidence that she opposed an unlawful employment practice or otherwise suggested that Pitre's decision was discriminatory. A generalized request for an explanation of an employment decision, without reference to discrimination prohibited by Title VII, is insufficient as a matter of law.

Plaintiff's alternative theory fares no better, even though the Defendant fails to address it. Although filing an EEOC charge is protected activity, *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005), the Plaintiff has not identified any materially adverse action that occurred *after* she filed the charge. Allegations of interpersonal hostility, absent evidence that they resulted in a significant change in employment status or would dissuade a reasonable worker from engaging in protected activity, do not satisfy the adverse-action requirement for a retaliation claim. Here, the Plaintiff offers only "conclusory allegations" and "unsubstantiated assertions" that Pitre exhibited "hostility" towards her and that "other school staff avoided her for fear of retaliation." *See Turner*, 476 F.3d at 343;

[Doc. 22-4, pp. 19–20]. It is clear that "normal petty slights, minor annoyances, and simple lack of good manners" do not constitute the *material* adversity contemplated by Title VII. *Burlington Northern*, 548 U.S. at 68, *citing Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998) ("Title VII … does not set forth 'a general civility code for the American workplace.'"). Here, the Plaintiff sets forth no evidence that the alleged hostility she endured is beyond the normal, minor annoyances that all employees experience or is otherwise actionable. Therefore, Plaintiff's retaliation claims fail as a matter of law.

## V. Hostile Work Environment Under Title VII and the LEDL

Title VII and the LEDL prohibit the creation of a hostile or abusive work environment. *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162 (5th Cir. 2007) (citing 42 U.S.C. § 2000e–2(a)(1)); *Robinson v. Healthworks Int'l, L.L.C.*, 837 So.2d 714, 718–19 (La. App. 2d Cir. 2003) (discussing the LEDL and noting that "Louisiana courts routinely look to federal jurisprudence for guidance"); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'").

To survive summary judgment on a hostile work environment claim, an employee must establish that: (1) the employee belongs to a protected class; (2) the employee suffered harassment affecting a "term, condition, or privilege" of their employment; (3) the harassment was unwelcome; and (4) the harassment was based on the employee's status as a member of a protected class. *Wantou v. Wal-Mart Stores*

*Tex., L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022). Critically, for harassment to affect a "term, condition, or privilege" of employment, the conduct at issue must be "sufficiently *severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment."[6] *Wantou*, 23 F.4th at 433 (emphasis added). In determining the "severity or pervasiveness" of workplace harassment, courts typically consider: (i) the frequency of the conduct; (ii) the conduct's severity; (iii) whether the conduct is physically threatening or humiliating; and (iv) whether the conduct "unreasonably interferes with an employee's work performance." *Id., citing Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Id.* (internal quotation marks omitted). This is a totality of the circumstances inquiry; no single factor is dispositive. *Id*.

In her Complaint, the Plaintiff alleges that she: (1) felt she was "publicly demoted" in a meeting; (2) was "constantly subjected to belittling comments and being publicly disregarded in the presence of peers and students;" and (3) felt her colleagues were hesitant to speak with her for fear of retaliation from Pitre. [Doc. 1-5, ¶¶ 3, 10]. In its Motion, the Defendant argues that these facts as alleged do not rise to an

---

[6]    Additionally, harassment must be either severe or pervasive; it need not be both. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005) ("[I]solated incidents, if egregious, can alter the terms and conditions of employment."); *see also Herster v. Bd. of Supervisors of La. State Univ.*, 72 F. Supp. 3d 627, 644–45 (M.D. La. 2014) (allegations of small but frequent derogatory comments sufficient to survive summary judgment). Consequently, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Wantou*, 23 F.4th at 432.

actionable level of hostility as a matter of law.[7]  In response, the Plaintiff claims that her hostile work environment claim is "fact-intensive, and she contends that because discovery has not closed, summary judgment is inappropriate.  [Doc. 24, p. 5].

But discovery closed in this case on September 15, 2025, and there is no indication that the Plaintiff sought to extend the discovery deadline.  [Doc. 15]. Furthermore, the Plaintiff fails to provide competent summary judgment evidence, such as affidavits from herself or co-workers, to support her factual allegations. Instead, Plaintiff relies on conclusory allegations that are insufficient to establish a *prima facie* claim or survive a motion for summary judgment.  Accordingly, this Court finds that Plaintiff's hostile work environment claim fails because none of the facts she has alleged—even if true—constitute conduct that was so severe or pervasive as to create an abusive working environment, nor does she raise a genuine issue that the harassment affected a "term, condition, or privilege" of her employment. Accordingly, the Defendant is entitled to summary dismissal of Plaintiff's hostile work environment claim.

## VI.   Title IX

Finally, the Court notes that the Plaintiff alleges a gender discrimination claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*  "Title IX prohibits sex discrimination by recipients of federal education funding." *Lewis v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286,

---

[7]   In support of its Motion, the Defendant attaches the Plaintiff's discovery responses to demonstrate that, even if true, none of the facts asserted in Plaintiff's Complaint amount to a hostile working environment.  [Doc. 22-4, pp. 16–17].

292 (5th Cir. 2025), *citing Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L.Ed.2d 361 (2005). The Supreme Court has held that the private right of action implied by Title IX includes claims of retaliation "where the funding recipient retaliates against an individual because [s]he has complained about sex discrimination." *Id.* at 171, 125 S. Ct. 1497. To prove a Title IX retaliation claim, a plaintiff must show that: (1) she engaged in activity protected by Title IX; (2) she suffered an adverse employment action; and (3) "a causal link exists between the protected activity and the adverse employment action." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014), *quoting Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *see also Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (per curiam) (applying the *Willis* Title VII retaliation standard in a Title IX case because both statutes have similarly worded provisions and are afforded similar interpretation); *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1119–20, 1119 n.43 (5th Cir. 2021) (same).

In the Fifth Circuit, Title IX does not afford a private cause of action for employment discrimination on the basis of gender because Title VII provides the exclusive remedy for such claims. *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995) (Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions). However, the Fifth Circuit does recognize a cause of action for retaliation under Title IX—independent of Title VII retaliation claims—where the retaliation stems from complaints about violations of Title IX itself. *Lowrey v. Texas A&M Univ. Sys.*, 117

F.3d 242, 247-48 (5th Cir. 1997).  The language of the anti-retaliation provision of Title IX and that of Title VII are similar and "should be accorded a similar interpretation." *Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494, 534–35 (N.D. Tex. 2023), *citing Lowrey*, 117 F.3d at 252 n.18.

Here, the Plaintiffs' gender discrimination claim alleged under Title IX fails as a matter of law because Title VII offers the exclusive remedy for that claim. Furthermore, because the Plaintiff's gender-based retaliation claim is cognizable under Title VII, and because the Plaintiff has set forth no evidence that her retaliation claim is based exclusively on allegations of noncompliance with the substantive provisions of Title IX, the rule of *Lakoski* preemption applies, and Title IX affords her no private right of action.  Considering the foregoing, any claims for gender discrimination or gender-based retaliation alleged by the Plaintiff under Title IX are subject to dismissal as a matter of law.

## CONCLUSION

Thus, for the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 22] is GRANTED.

THUS, DONE AND SIGNED in Chambers on this 22nd day of December 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE